UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARCHANA PAI**,<br><br>                Plaintiff,<br><br>                v.<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**,<br><br>                Defendant. | Civil Action No. 9-cv-1354 (RLW) |

**MEMORANDUM OPINION**

Before the Court is Defendant United States Citizenship and Immigration Services' ("USCIS") Motion to Dismiss (Docket No. 10). For the following reasons, USCIS' Motion is hereby GRANTED.

**FACTUAL SUMMARY**

Plaintiff Archana Pai ("Pai") is a citizen of India. Although her Complaint does not specify where she currently resides, it appears from the record that Pai currently lives in India. Plaintiff's Opp. to Mot. to Dismiss, at 2-3. Pai challenges the USCIS' denial of Delta Information Systems, Inc.'s ("Delta") I-140 Immigrant Petition for Alien Worker, in which Pai was the named beneficiary.

Pursuant to the Immigration and Nationality Act, there is a multi-step process for an alien to obtain entrance to and permanent residence in the United States based upon potential employment. First, the alien must have a prospective employer in the United States. That employer must name the prospective employee and seek the Secretary of Labor's certification (on a Form ETA-370) that: 1) there are not sufficient workers in the United States "who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States at the place where the alien is to perform such skilled or unskilled labor"; and 2)

1

employing the alien worker "will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i). If the Secretary makes such findings, she returns the labor certification to the employer. 20 C.F.R. § 656.24(d).

Once the position is certified, the employer may then file a Form I-140 (Immigrant Worker Visa Petition) with USCIS, naming the same employee/beneficiary and attaching the labor certification. 8 C.F.R. § 204.5(l)(3)(i). An immigrant visa cannot be issued without the Secretary's certification that the requirements of Section 1182 above are met. 8 U.S.C. § 1153(b)(3)(C). As one court has put it, an I-140 visa petition "constitutes a request to the INS that the alien named in the Labor Certification be classified as eligible to apply for designation within a specified visa preference employment category." United States v. Ryan-Webster, 353 F.3d 353, 356 (4th Cir. 2003).

If the USCIS grants the employer's I-140 petition, the alien is eligible to stand in line for an immigrant visa number to be issued by the Department of State. Id. Finally, once an alien[1] has obtained a visa number, the alien may file a Form I-485, applying to have his/her non-immigrant status adjusted to become a permanent resident entitled to live and work in the United States. 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1). Although the USCIS' granting of an employer's I-140 petition is a prerequisite to the alien's I-485 petition, it is not necessarily a guarantee that the I-485 petition will also be granted. Moreover, although an alien may file an I-485 in her own name and on her own behalf, the I-140 petition is solely the employer's petition. The I-140 petition must be filed and prosecuted by the employer, who is the only party with standing in the agency to challenge the decision with respect to that petition. See 8 C.F.R. §

---

[1] The Form I-485 process applies to aliens who are already inside the United States. The record reflects that this is the process which Pai followed in this case.

103.3(a)(1)(iii)(B);[2] see also 8 C.F.R. §§ 103.2(b)(6) (petitioner has unilateral right to withdraw petition), (b)(8)(iii) (petitioner bears burden of responding to agency if it issues a Notice of Intent to Deny).

In this case, Delta filed a form ETA-370 with the Department of Labor on March 15, 2001, naming Gayatri Mantena as the purported employee (First Amend. Compl. ("FAC") ¶ 7). On August 25, 2001, the Secretary certified the position and returned the certification to Delta. (Compl. Ex. B at 10). It appears that Delta did nothing further on the application with regard to Ms. Mantena. On July 14, 2007, however, Delta filed an I-140 petition with USCIS seeking to substitute Pai for Mantena as the prospective employee and seeking to classify Pai as a professional or skilled worker under 8 U.S.C. § 1153(b)(3)(A)(i) (FAC ¶¶ 1, 6, 8).[3] After proceedings in the USCIS, the agency ultimately denied Delta's petition on January 28, 2010. (FAC ¶ 22). The USCIS determined that Delta failed to meet its burden to show it had the ability to pay Pai's proffered wage during the relevant time period.

Despite the fact that Pai's counsel represented Delta before the USCIS, Pai—not Delta—now challenges the USCIS' decision in this Court.[4] Pai challenges the agency's decision under

---

[2] In promulgating this rule in 1990, the Immigration and Naturalization Service responded to a commentor who was concerned that the rule took away the appeal rights of the beneficiaries of visa petitions: "The proposed wording does not take away appeal rights of visa petition beneficiaries since they cannot file appeals. A <u>visa petition proceeding has long been a proceeding between the petitioner and the Service</u>. The beneficiary of the petition does not have any standing in such a proceeding." Appeals, Precedents, Certifications, and Motions, 55 Fed. Reg. 20767, 20768 (May 21, 1990) (to be codified at 8 C.F.R. pt. 103) (emphasis added).

[3] The petition and application for substitution were filed just a few days before the USCIS disallowed the practice of substitution. The government, therefore, does not challenge Delta's petition on the basis that Mantena, not Pai, was the original employee named in the labor certification.

[4] When asked at the hearing why Delta was not a party to this case, counsel for Pai made the representation that Delta, like some other companies he represents, did not want to be a party to this case out of a concern that if Delta brought a lawsuit against the United States, it "would be

3

the Administrative Procedures Act as arbitrary, capricious or otherwise not in accordance with law. She asks this Court to set aside the USCIS' decision and compel the agency to approve Delta's visa petition in her favor. Pai does not challenge the agency's denial of her I-485 petition.

## ANALYSIS

### A. Standard of Review

Despite the favorable inferences a plaintiff generally receives on a motion to dismiss, under Rule 12(b)(1), "it is to be presumed that a cause lies outside the federal court's limited jurisdiction unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction." Ramer v. United States, 620 F.Supp.2d 90, 95-6 (D.D.C. 2009) (internal citations and quotation marks omitted). Moreover, "[w]hile the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." See Speelman v. United States, 461 F.Supp.2d 71, 73 (D.D.C. 2006). "Plaintiffs' factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wightman-Cervantes v. Mueller, 750 F.Supp.2d 76, 78 (D.D.C. 2010) (internal quotation marks and citations omitted).

### B. Analysis

#### 1. Article III Standing

The government contends that Pai lacks standing to challenge the agency's decision and that Delta is the only proper party to do so. The parties have not cited any binding authority

---

somehow subject to retaliation." Thus, although Delta still wanted to hire Pai, according to counsel, Delta refused to challenge the agency's denial of its own I-140 petition in federal court.

from this Circuit squarely on point, and this Court knows of none. Furthermore, two cases from this District on this issue have come to opposite conclusions.[5]

Lack of standing is a defect in subject matter jurisdiction, and a plaintiff's standing under Article III must be first determined "in order to establish the jurisdiction of the Court to hear the case and reach the merits." George v. Napolitano, 693 F.Supp.2d 125, 128-29 (D.D.C. 2010) (internal citations omitted). Standing focuses on the party before the court and not on the issues the party seeks to adjudicate. Nat'l Fed'n of Fed. Emp. v. Cheney, 883 F.2d 1038, 1041 (D.C. Cir. 1989).

It is well-settled that the "irreducible constitutional minimum of standing" requires three elements: 1) Plaintiff must have suffered an injury in fact—an invasion of a <u>legally protected interest</u>—which is a) concrete and particularized; and b) actual or imminent, not conjectural or hypothetical; 2) there must be a causal connection between the injury and the conduct complained of; which injury has to be fairly traceable to the challenged action and not the result of the independent action of some third party not before the court; and 3) it must be likely (as opposed to merely speculative) that the injury will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Pai has failed to allege any injury in her First Amended Complaint, let alone an injury to a "legally protected interest" as required by Lujan. Id. Relying on a number of newly-cited cases, Pai argued for the first time at the hearing on the motion to dismiss that she had suffered two specific injuries cognizable under Article III: 1) being deprived the opportunity to immigrate

---

[5] See George v. Napolitano, 693 F.Supp.2d 125, 130 (D.D.C. 2010) (holding that beneficiary of I-140 visa petition lacked standing to challenge decision of USCIS); Maramjaya v. United States Citizenship and Immigration Services, No. 06-2158, slip op. at 9 (D.D.C. Mar. 26, 2008) (holding that beneficiary of an I-140 petition had standing to challenge decision of USCIS).

to the United States; and 2) economic injury in the form of lost wages. This Court is not persuaded that the authority on which Pai relies establishes her injury for Article III purposes.

Pai argues that this Circuit's holdings in Jaimez-Revolla v. Bell, 598 F.2d 243 (D.C. Cir. 1979) and Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, 45 F.3d 469 (D.C. Cir. 1996) stand for the general rule that a non-resident alien's deprivation of the right to immigrate to the United States *per se* constitutes Article III injury. Neither case, however, supports Pai's position. In Jaimez-Revolla, the court found that the plaintiff had established injury to satisfy Article III. In that case, however, Jaimez-Revolla was challenging *his own* application, not the petition of another person, or, as in this case, a prospective employer's petition. Moreover, in Jaimez-Revolla, the plaintiff had been living in the United States, and voluntarily left the country to pursue a request for legal readmission. The D.C. Circuit held that in these circumstances:

> To deny standing to one who had already been in this country would encourage illegal aliens to remain here illegally rather than return home and seek legal entry through an application for readmission. In addition, *Congress specifically provided a procedure by which deported aliens could seek permission to reapply for readmission.* 8 U.S.C. § 1182. It would be inconsistent for us to hold that Congress intended the Attorney General's decision to be reviewable, but simultaneously to deny standing in this situation because of jurisprudential considerations.

Jaimez-Revolla, 598 F.2d at 246 (emphasis added). The facts of Jaimez-Revolla, therefore, are vastly different from the facts of this case. The case does not, as Pai contends, stand for the proposition that *any* immigrant who is deprived the opportunity to enter this country suffers an injury in fact sufficient to establish Article III standing.

Nor does the Legal Assistance case provide authority for Pai's position. In Legal Assistance, the court's discussion focused on whether, in the context of family-based petitions,

6

the family members/appellants *living in the United States* had standing. 45 F.3d at 471-72. Because it found that the resident appellants had standing, the court held that it need not reach the issue of whether the non-resident aliens had standing. Id. The court did not hold that immigrants living outside the country and who are denied entry to the country necessarily suffer Article III injury. Here, there is no allegation that Pai currently lives in the United States.

In support of her argument that she suffered an injury in fact because of lost future wages, Pai relied on two cases standing for the general proposition that economic injuries are cognizable injuries under Article III. Although economic injury can suffice under Article III, the plaintiffs in the cases cited by Pai—Clinton v. City of New York, 524 U.S. 417 (1998) and Young v. City of Simi Valley, 216 F.3d 807 (9th Cir. 2000)—had alleged specific, concrete and imminent economic injury due to Defendants' actions. Here, Pai has not alleged any such injury. Moreover, such injury is attenuated in this case because the record is unclear as to when and whether she would be able to enter the country to work for Delta. Thus, Pai has failed to meet her burden of alleging any concrete and particularized injury sufficient to satisfy Article III standing requirements. See Brown v. F.B.I., 2011 WL 2516420, at *4 (D.D.C. June 24, 2011) (stating it is plaintiff's burden to allege an injury in fact that is concrete and particularized).

### 2. Prudential Standing

Even if Pai's allegations of injury were sufficient to meet Article III requirements, Pai must still meet the requirements of prudential standing. See Cheney, 883 F.2d at 1041 (stating that the requirements of standing are separated into two categories: Article III constitutional requirements and the prudential requirements created by the judiciary). Pai also fails to meet the prudential standing requirements.

### a. The Zone of Interests Test

Prudential standing requires that the "plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982) (internal quotation marks omitted). Although the zone of interests test is not meant to be "especially demanding" and courts are not required to find evidence that Congress intended to benefit the plaintiff, "the absence of a clear indication of congressional intent to *forbid* the suit does not automatically confer standing on the plaintiff" either. Fed'n for American Immigration Reform, Inc. v. Reno, 93 F.3d 897, 903 (D.C. Cir. 1996) (citing Cheney, 883 F.2d at 1052). The jurisprudence of this Circuit reflects that prudential standing is a limitation on standing, particularly in cases challenging agency action under the Administrative Procedures Act:

> Section 702 [of the APA] and the prudential zone of interest test are intimately related—the former provides a statutory grant from Congress to an aggrieved party to contest agency action and the latter provides a <u>judicial limitation necessary to ensure that the proper party is asserting the claim against the agency</u>.

Cheney, 883 F.2d at 1042 (emphasis added). Moreover, where the plaintiff is not the subject of the agency's contested action, the prudential standing test denies review "'if the plaintiff's interests are *so marginally related to or inconsistent with the purposes implicit in the [relevant] statute* that it cannot reasonably be assumed that Congress intended to permit the suit.'" Id. (quoting Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 399 (1987)) (emphasis in original).

This Circuit has recently held that there is no "special rule governing the prudential standing of non-resident aliens." Doe v. Exxon Mobile Corp., 2011 WL 2652384, at *44 (D.C. Cir. July 8, 2011). Rather, the court must analyze "prudential standing on a case-by-case basis based on the zone of interests of the law providing the basis for the plaintiff's cause of action."

8

Id.  The Court will therefore examine the zone of interests of the statute upon which Pai's lawsuit is based.

### b.  The Zone of Interests Protected by 8 U.S.C. § 1153

Pai alleges that the USCIS erred when it failed to approve Delta's visa petition seeking to classify Pai as a professional or skilled worker under 8 U.S.C. § 1153(b)(3)(A)(i).[6]  To determine whether Pai satisfies the requirements of prudential standing, i.e., whether her complaint falls within the statute's zone of interests, it is necessary to examine the language and legislative history of Section 1153(b)(3)(A)(i).  As shown below, the statute sets forth the numerical limits and the procedure for granting employment-based preferences:

> **(b) Preference allocation for employment-based immigrants**
> Aliens subject to the worldwide level specified in section 1151(d) of this title for employment-based immigrants in a fiscal year shall be allotted visas as follows:

---

[6]  In her First Amended Complaint, Pai alleges that she seeks review of the USCIS' denial of Delta's petition under 8 U.S.C. § 1153(b)(3).  FAC ¶ 1.  Specifically, she alleges that Delta's petition sought to classify Pai as a professional or skilled worker under Section 1153(b)(3)(A)(i).  FAC ¶ 6.  Defendant's Motion to Dismiss is also premised on this assertion.  Mem. at 3 ("On July 14, 2007, Delta filed an I-140 Immigration Petition for Alien Worker seeking to classify Plaintiff as a professional or skilled worker pursuant to Section 203(b)(3)(A)(i) of the INA, 8 U.S.C. § 1153(b)(3)(A)(i) . . . .").

Upon its own review of the record, however, the Court noticed some confusion on this issue, given that there were documents referring to Delta's petition seeking to classify Pai under Section 1153(b)(2) (as a member of the professions holding an advanced degree) *and* under Section 1153(b)(3) (professional or skilled worker).  See, e.g., Memorandum from USCIS to Piston & Carpenter, P.C. (Feb. 12, 2009) (stating that Delta's petition sought to classify Pai under Section (b)(3)); Decision of USCIS (Jan. 28, 2010) (stating that Delta's petition sought to classify Pai under Section (b)(2)).  If Delta's petition actually sought to classify Pai under Section 1153(b)(2), Pai never made that allegation in her Complaint or in her briefs.  Consistent with the parties' allegations and pleadings, therefore, this Court has analyzed this case based on the premise that Delta's petition was brought under 1153(b)(3).  The Court notes, however, that all petitions under Section 1153(b)(2) (with one exception not applicable here) still require an employer-petitioner and a labor certification.  See 8 U.S.C. § 1152 (b)(2)(A) (requiring that alien is sought by employer in the United States); see also 8 C.F.R. § 204.5(k) (setting forth requirement that employer serve as the petitioner on a Form I-140 seeking to classify alien under this statute and requiring labor certification).  Based on the purpose and structure of Section 1153(b)(2), therefore, this Court's analysis would likely have been the same.

       \*  \*  \*

  **(3) Skilled workers, professionals, and other workers**
   **(A) In general**
   Visas shall be made available, in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (1) and (2), to the following classes of aliens who are not described in paragraph (2):
    **(i) Skilled workers**
     Qualified immigrants who are capable, at the time of petitioning for classification under this paragraph, of performing skilled labor (requiring at least 2 years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States

       \*  \*  \*
   **(C) Labor certification required**
   An immigrant visa may not be issued to an immigrant under subparagraph (A) until the consular officer is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 1182(a)(5)(A) of this title.

Thus, to obtain a preference allocation under Section 1153(b)(3), the labor certification requirements of Section 1182(a)(5)(A) must be met. Given the integral relationship of Section 1182(a)(5)(A) and Section 1153(b)(3), it is prudent to look also at the statute setting forth the labor certification requirements. See Reno, 93 F.3d at 903-04 (stating that, under zone of interests test, court may examine statutory provisions having "integral relationship" to the statute under which the suit was brought). Section 1182(a)(5)(A) states:

  **(5) Labor certification and qualifications for certain immigrants**
   **(A) Labor certification**
    **(i) In general**
    Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that—
    (I) there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place

> where the alien is to perform such skilled or unskilled labor, and
>
> (II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

The plain language of these statutory provisions reflects a concern to protect the interests of workers in the United States. This Circuit recognized this concern when it observed:

> The INA contains various numerical limits on immigration. E.g., 8 U.S.C. § 1153. At least in some instances, these limits reflect a clear concern about protecting the job opportunities of United States citizens. A clear example is § 1153(b)(3)(A), which restricts visas for various types of workers to individuals capable of performing work for which 'qualified workers are not available in the United States.'

Reno, 93 F.3d at 903. The legislative history of the statutory scheme, moreover, reinforces this congressional purpose. In discussing the precursor to the current labor certification requirement, Congress repeatedly explained the "safeguards for American labor":

> **H. <u>Safeguards for American labor</u>**
>
> Those provisions in existing law relating to the exclusion of contract laborers and persons induced or assisted to come to this country and certain similar provisions are omitted from the bill in view of the adoption of a principle of selectivity in the allocation of quota numbers or permits for temporary residence on the basis of the need for the labor and services of aliens.
>
> While the bill will remove the "contract labor clauses" from the law, <u>it provides strong safeguards for American labor</u>. Section 212(a)(14) provides for the exclusion of aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor if the Secretary of Labor has determined that there are sufficient available workers in the locality of the aliens' destination who are able, willing, and qualified to perform such skilled or unskilled labor and that the employment of such aliens will adversely affect that wages and working conditions of workers in the United States similarly employed. This provision is applicable to all aliens other than those whose services have been determined to be needed in the United States under certain other provisions of the bill or who are entitled to preferential treatment

> because of their relationship to United States citizens or aliens who have been lawfully admitted for permanent residence. <u>It is the opinion of the committee that this provision will adequately provide for the protection of American labor against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country.</u>

H.R. Rep. No. 1365, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1705 (emphasis added).

As this Circuit explained in <u>International Union of Bricklayers & Allied Craftsmen v. Meese</u>, 761 F.2d 798 (D.C. Cir. 1985), the provision described in the 1952 legislative history was amended in 1965 to its current form: "alien labor is admitted only if the Secretary of Labor finds that American labor will not be adversely affected by the entry." <u>Id</u>. at 805.  This statutory change was made to strengthen even more the protection of American workers.  <u>Id</u>. (citing legislative history of 1965 amendments).  As one source described the change: "[i]n the 1952 Act, the alien could enter unless the Secretary of Labor closed the door.  Under the 1965 statute, the door is closed to the alien, unless the Secretary of Labor opens it."  3 Charles Gordon, Stanley Mailman, and Stephen Yale-Loehr, <u>Immigration law and Procedure</u>, § 39.02[3][a] (Matthew Bender, Rev. Ed.) (internal quotation mark and citation omitted).  In light of this congressional concern for American workers, this Circuit stated in <u>Bricklayers</u> that "[t]his court has held that statutes designed for the protection of the American workers create a sufficient 'zone of interest' to confer upon those [American] workers a proper ground for standing."  <u>Bricklayers</u>, 761 F.2d at 798.

This Court agrees that the plain language, as well as the legislative history of, the numerical limits of Section 1153(b)(3) and the labor certification requirements of Section 1182(a)(5)(A) reflect a clear congressional concern for protecting the interests of American labor

over those of foreign workers.  In addition, the congressional concern extends to ensuring that American employers have the ability to hire qualified non-resident alien workers where no qualified American workers are available.  However, nothing in the language or legislative history of Section 1153(b)(3) reflects a similar concern to protect the interests of non-resident aliens seeking to enter this country to obtain a job, and those aliens' interests are seemingly inconsistent with the interests of American workers.  It does not appear that Congress intended that such a non-resident alien would be a putative plaintiff where his/her prospective employer refused to participate in the federal action.  This Court is therefore compelled to conclude that Pai's interests "are *so marginally related to or inconsistent with the purposes implicit in the [relevant] statute* that it cannot reasonably be assumed that Congress intended to permit the suit."  Cheney, 883 F.2d at 1042 (emphasis in original).  Accordingly, looking at the specific facts of this case and the zone of interests that Congress intended to protect in this particular statutory scheme, this Court finds that it is the employer, not Pai, that has standing in this case to challenge the USCIS' decision.

Pai relies on a few opinions outside this Circuit for her position that beneficiaries of immigrant visa petitions have standing to challenge the denial of such petitions.  None of those cases, however, were cases in which the court had the occasion to analyze the zone of interests of the specific employment-based preference system at issue in this case.  Moreover, in those cases (unlike this one), the beneficiary's interests were either consistent with the zone of interests the statute was designed to protect or the plaintiff had established Article III injury based on the specific facts of that case.  See Bangura v. Hansen, 434 F.3d 487, 499-500 (6th Cir. 2006) (holding that the interests of plaintiffs, who challenged decision on immediate relative visa petitions, were the same that Congress sought to protect—preservation of family unit); Ghaly v.

Immigration and Naturalization Service, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995) (holding that plaintiff/beneficiary was within the zone of interests of marital fraud statute at issue); Abboud v. Immigration and Naturalization Service, 140 F.3d 843, 847 (9th Cir. 1998) (holding that beneficiary of his father's relative petition had suffered Article III injury).

This Court's decision is in accord with numerous other courts that agree (albeit for a variety of reasons) that the petitioner—and not the beneficiary—of a visa application is the proper party with standing to challenge the agency's action. See George, 693 F.Supp.2d at 130; Ibraimi v. Chertoff, 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008) (holding that plaintiff/beneficiary lacked standing to challenge denial of I-140 petition because he had not suffered an "invasion of his legally protected interest" and, thus, only petitioner was proper party with standing); Blacher v. Ridge, 436 F.Supp.2d 602, 606 n.3 (S.D.N.Y. 2006) (stating that, because admission to the United States is a privilege, an alien lacks any constitutionally-protected right to enter the United States as a nonimmigrant and only petitioner/employer had standing); Liao v. Holder, 691 F.Supp.2d 344, 350 n.6 (E.D.N.Y. 2010) (children beneficiaries of adult permanent residents' visa petitions lacked standing to challenge denial in federal court); Li v. Renaud, 709 F.Supp.2d 230, 236 n.3 (S.D.N.Y. 2010) (dismissing beneficiary of visa petition's claim against USCIS for lack of standing); S & J Roofing Contractors v. Patterson, 2011 WL 1045643, at *2 (S.D. Fla. Mar. 17, 2011) (holding that only employer, and not beneficiary, had standing to challenge USCIS' denial of I-140 petition); Morris v. Gonzalez, 2007 WL 2740438, at *6 (E.D. Pa. Sept. 19, 2007) (holding that only petitioner, and not beneficiary, had standing to seek review of revocation of beneficiary's visa).

## **CONCLUSION**

Because this Court finds that Pai lacks standing in this case, it need not reach the issue of whether Pai failed to state a claim under Rule 12(b)(6).  For the foregoing reasons, USCIS' Motion to Dismiss is granted and Plaintiff's Complaint is dismissed.  An order accompanies this Memorandum.

Date: September 2, 2011                                           /s/                         
                                                              ROBERT L. WILKINS
                                                              United States District Judge